[Cite as *State v. Alhashimi*, 2017-Ohio-7658.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NOS. CA2016-07-065 |
| Plaintiff-Appellee, | : | CA2017-07-066 |
| | : | O P I N I O N |
| - vs - | | 9/18/2017 |
| | : | |
| JACOB H. ALHASHIMI, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CR30632

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

William F. Oswall, Jr., 119 East Court Street, Suite 311, Cincinnati, Ohio 45202, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Jacob H. Alhashimi, appeals his conviction and sentence in the Warren County Court of Common Pleas.

{¶ 2} On December 18, 2014, the Warren County Grand Jury returned a ten-count indictment charging Alhashimi with six felony counts of aggravated trafficking in drugs, three felony counts of trafficking in cocaine, and one felony count of permitting drug use. On December 31, 2014, the state filed a superseding indictment that was identical to the first,

except that Count 9 for aggravated trafficking in drugs included a major drug offender specification. The first indictment was dismissed. Alhashimi waived his right to a jury and the matter proceeded to a bench trial on June 18, 2015. The trial revealed the following facts.

{¶ 3} On September 23, 2014, Alhashimi met with Detective A.K., an undercover officer of the Warren County Drug Task Force, at a grocery store parking lot in Springboro, Ohio to purchase 50 unit doses of ecstasy.[1] A.K. successfully purchased 50 tablets for $300 in prerecorded money. Testing by the Miami Valley Regional Crime Lab revealed the tablets contained ethylone and cocaine, Schedule I and II controlled substances, respectively. Shortly after the first purchase, A.K. and Alhashimi discussed over the telephone the purchase of another 50 unit doses of ecstasy. During this discussion, Alhashimi indicated the tablets would be "double stacked or triple stacked", and thus, "they were more potent than the first set."

{¶ 4} On October 6, 2014, A.K. and Alhashimi met again in the Springboro grocery store parking lot where Alhashimi handed A.K. 50 tablets in exchange for $300 in prerecorded money. The tablets tested positive for ethylone and cocaine. Following this second transaction, A.K. and Alhashimi discussed over the telephone the possibility of a larger transaction. The two agreed, and on October 17, 2014, met at a supercenter parking lot in Lebanon, Ohio, where Alhashimi handed A.K. 100 tablets in exchange for $600 in prerecorded money. Officers in a surveillance vehicle nearby photographed the transaction and several juveniles in the parking lot at the time of the transaction. Officers later returned to the parking lot to investigate the distance between parking spots using their stride as a unit of measurement. Testing of the tablets indicated some contained ethylone, while others

---

1. We note that the names of the undercover officers are omitted to protect the individual officers' identities.

contained Ibuprofen and caffeine. Following the third transaction, A.K. communicated to Alhashimi an interest in purchasing 1,000 tablets. Alhashimi responded, "that is a big number. He can get it, but he is not ready to go to jail yet." Alhashimi further informed A.K. that he could also sell him heroin for a specified price.

{¶ 5} On October 27, 2014, the two further discussed the larger order. The two discussed purchasing 1,000 tablets in exchange for $5,000, and Alhashimi indicated he did not want to provide the tablets all at once. The two agreed to exchange the tablets over three days in increments of 200, 200, and 500. Subsequent to this agreement, Alhashimi informed A.K. that his partner wanted him to raise the price to $5,500 due to the quality of the tablets. In addition to testimony regarding these conversations, the trial court permitted the use of a text message conversation regarding the purchase to refresh a witness' recollection. The prosecutor disclosed the text message conversation immediately upon its discovery, which was approximately 48 hours before the start of trial.

{¶ 6} On October 29, 2014, the first of three installments in the large order occurred at the supercenter in Lebanon, Ohio, where Alhashimi exchanged 200 tablets for $1,100 in prerecorded money. Alhashimi indicated the tablets "contained more cocaine and that was the reason [A.K.] was paying $5.50 instead $5 per unit." The bag exchanged between the two contained 199 tablets, which did not test positive for any controlled substances. Officers in a surveillance vehicle nearby photographed the transaction and several juveniles in the parking lot at the time of the transaction.

{¶ 7} On October 30, 2014, the second installment in the large purchase occurred at a retail store in Lebanon, Ohio. The two exchanged 300 tablets for $1,650 in prerecorded money. The bag exchanged between the two contained 294 tablets, six of which tested positive for ethylone. On October 31, 2014, the third installment in the large purchase occurred at a restaurant in Lebanon, Ohio. The two exchanged 500 tablets for $2,750 in

prerecorded money. The transaction occurred inside the restaurant. The bag exchanged between the two contained 499 tablets, 201 of which contained ethylone. Upon leaving the restaurant, police arrested Alhashimi. Officers in a surveillance vehicle nearby photographed several juveniles entering the restaurant while Alhashimi and A.K. were inside.

{¶ 8} The trial court found Alhashimi guilty on all counts except Count 9 and the major drug offender specification. The trial court found him guilty of the following offenses: (1) Count 1 – aggravated trafficking in drugs on September 23, 2014, a second-degree felony, (2) Count 2 – trafficking in cocaine on September 23, 2014, a fifth-degree felony, (3) Count 3 – aggravated trafficking in drugs on October 6, 2014, a third-degree felony, (4) Count 4 – trafficking in cocaine on October 6, 2014, a fifth-degree felony, (5) Count 5 – aggravated trafficking in drugs within the vicinity of a juvenile on October 17, 2014, a first-degree felony, (6) Count 6 – trafficking in cocaine within the vicinity of a juvenile on October 29, 2014, a fourth-degree felony, (7) Count 7 – aggravated trafficking in drugs on October 30, 2014, a fourth-degree felony, (8) Count 8 – aggravated trafficking in drugs within the vicinity of a juvenile on October 31, 2014, a first-degree felony, and (10) Count 10 – permitting drug use from September 1, 2014 to October 31, 2014, a fifth-degree felony.

{¶ 9} The trial court sentenced Alhashimi to a mandatory five-year prison term on Counts 1, 5, and 8, to be served concurrently with each other; to a 12-month prison term on Counts 2 and 4, to be served concurrently with each other, but consecutively to Counts 1, 5, and 8; to a12-month prison term on Count 3, to be served consecutive to all other sentences; to a 12-month prison term on Counts 6 and 7, to be served concurrently with each other, but consecutively to all other sentences. Therefore, the trial court sentenced Alhashimi to an aggregate eight-year prison term, five years of which was mandatory. The trial court found the consecutive sentences were necessary to punish Alhashimi and to protect the public. The trial court found the consecutive sentences were consistent with the principles and

purposes of sentencing and not disproportionate to Alhashimi's conduct and the danger he poses to the public.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL [COURT] ERRED WHEN IT REFUSED TO ALLOW AN INSPECTION OF THE GRAND JURY TRANSCRIPT.

{¶ 12} Assignment of Error No. 2:

{¶ 13} DEFENDANT-APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 14} Alhashimi contends the trial court abused its discretion by denying his request for an in camera review of the grand jury transcripts because he demonstrated a particularized need for disclosing the transcripts that outweighed the state's need for secrecy in the proceedings. In so doing, Alhashimi argues he met the requirements for disclosure because the first indictment did not contain a major offender specification and he had individual concerns regarding who provided testimony at the second grand jury proceeding. Alhashimi further claims the trial court erred by denying his request without first inspecting the transcripts to determine whether Alhashimi presented a viable issue.

{¶ 15} Crim.R. 6(E) governs the disclosure of grand jury testimony, which provides

> [a] * * * prosecuting attorney * * * may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

{¶ 16} The Ohio Supreme Court stated that grand jury proceedings are secret, and thus, a defendant has no right to inspect grand jury transcripts either before or during trial unless the "ends of justice require it and there is a showing by the defense that a

- 5 -

particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer*, 66 Ohio St.2d 139 (1981), paragraph two of the syllabus. A defendant establishes a particularized need for grand jury transcripts when the circumstances reveal a probability that "the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Id.* at paragraph three of the syllabus.

{¶ 17} This determination is a fact question left to the sound discretion of the trial court. *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 154, citing *Greer* at paragraphs one and three of the syllabus. Accordingly, "[a] decision denying the release of the grand jury transcript will not be reversed absent an abuse of discretion." *Widmer* at ¶ 154, citing *State v. Coley*, 93 Ohio St.3d 253, 261 (2001). An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 18} The trial court denied Alhashimi's request at the close of evidence for an in camera review of the grand jury transcripts because it was untimely pursuant to Crim.R. 12(C) and moot due to the trial court's not guilty verdict with respect to Count 9. We find the trial court did not abuse its discretion by denying Alhashimi's request.

{¶ 19} Pursuant to Crim.R. 12(C)(2), defects in the indictment, other than failure to show jurisdiction in the court or to charge an offense, must be raised prior to trial. "Therefore, absent a jurisdictional question, an attack on the validity of an indictment via a pretrial motion should be brought before the trial court as provided by Crim.R. 12." *State v. Rohde*, 2d Dist. Montgomery No. 26087, 2014-Ohio-5580, ¶ 22. Specifically, Crim.R. 12(D) provides that all pretrial motions, with some specified exceptions, must be made within 35

days after arraignment or seven days before trial, whichever is earlier.

{¶ 20} Alhashimi claims his concerns with the indictment process did not arise until trial; therefore, he could not have raised them within the parameters of Crim.R. 12. Alhashimi's concern involves the major drug offender specification added to Count 9. However, the addition of the specification occurred on December 31, 2014 and the trial did not begin until June 18, 2015. Moreover, Alhashimi's counsel indicated to the trial court on the morning before trial that he intended to request an in camera review of the grand jury testimony. Thus, Alhashimi was aware of the addition of the specification in advance of trial. Additionally, the trial court did not err in finding its acquittal of Alhashimi on Count 9 with the major drug offender specification rendered Alhashimi's request moot because the scope of Alhashimi's request was limited to Count 9. *See State v. Skatzes*, 2d Dist. Montgomery No. 15848, 2003-Ohio-516, ¶ 414 (finding motion for disclosure of grand jury transcripts moot where the basis for the alleged error was obviated). Accordingly, the trial court did not abuse its discretion by finding Alhashimi's request at the close of evidence untimely and moot. The trial court did not err in making such findings without independently reviewing the transcripts, as the law does not require such.

{¶ 21} Furthermore, Alhashimi's request was an attempt to review the grand jury transcripts for potential irregularities that may have aided him at trial. However, speculation in exploring the grand jury transcripts does not meet Alhashimi's burden to demonstrate a "particularized need." *Accord State v. Neiderhelman*, 12th Dist. Clermont No. CA94-10-081, 1995 Ohio App. LEXIS 4024, *21 (Sept. 18, 1995) ("[a]ppellant's speculation or assertion that a review of the grand jury testimony would reveal inconsistencies is insufficient to show the existence of a particularized need as such an argument could be made in every case").

{¶ 22} Alhashimi further argues he was denied the effective assistance of trial counsel because his counsel failed to timely file a motion challenging the grand jury

proceedings in advance of the trial date. Therefore, Alhashimi contends any waiver of the issue due to his trial counsel's failure prejudiced him.

{¶ 23} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984); *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 24} Even assuming deficiency by Alhashimi's trial counsel for failing to timely file a request for an in camera review of the grand jury transcripts, Alhashimi's claim for ineffective assistance of counsel fails because he cannot demonstrate any resulting prejudice. As detailed above, the trial court did not abuse its discretion in denying the request as moot. Therefore, Alhashimi cannot demonstrate that but for his trial counsel's failure to timely file such request, the result of the proceedings would have been different, as the trial court acquitted Alhashimi of the charge underlying his request.

{¶ 25} Accordingly, Alhashimi's first and second assignments of error are overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED IN CONVICTING DEFEND[AN]T-APPELLANT OF COUNT 6 AND ITS SPECIFICATION, COUNT 10, AND THE SPECIFICATIONS TO

COUNTS 5 AND 8 FOR INSUFFICIENT EVIDENCE.

{¶ 28} Alhashimi contends his convictions for aggravated trafficking in drugs within the vicinity of a juvenile in Count 5, trafficking in cocaine within the vicinity of a juvenile in Count 6, aggravated trafficking in drugs within the vicinity of a juvenile in Count 8, and permitting drug use in Count 10 are not supported by sufficient evidence.

{¶ 29} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 102 (1997), citing *Black's Law Dictionary* (6th Ed.1990) 1433. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259-60 (1991), *superseded by constitutional amendment on other grounds as stated by Smith* at 102.

{¶ 30} Alhashimi argues the state failed to present sufficient evidence for his conviction for trafficking in cocaine within the vicinity of a juvenile in Count 6 because laboratory testing did not indicate the presence of any controlled substances in the tablets sold on October 29, 2014. Thus, Alhashimi argues a conviction pursuant to R.C. 2925.03(A)(1) must be based on the physical exchange of actual cocaine, rather than, the intent to traffic what the accused represented as cocaine. Alhashimi further argues he did not offer to sell cocaine to the undercover officer because the transaction only pertained to ecstasy tablets.

{¶ 31} R.C. 2925.03(A)(1) provides "[n]o person shall knowingly * * * [s]ell or offer to

sell a controlled substance * * *." Contrary to Alhashimi's claim otherwise, "[a] person can 'offer to sell a controlled substance' in violation of R.C. 2925.03(A)(1) without transferring a controlled substance to the buyer." *State v. Scott*, 69 Ohio St.2d 439 (1982), syllabus. Therefore, it is immaterial whether the testing of the tablets exchanged for money between Alhashimi and A.K. indicated any controlled substances. Rather, "[b]y using the phrase 'offer to sell' in the disjunctive with 'sell' throughout R.C. 2925.03, the General Assembly expressly and properly prohibited" marketing and offering to sell a controlled substance "as a form of trafficking in drugs." *Id.* at 441; *State v. Siggers*, 9th Dist. Medina No. 09CA0028-M, 2010-Ohio-1353, ¶ 13 (stating R.C. 2925.03[I] codifies Ohio Supreme Court case law establishing that "drug" pursuant to the statute includes any substance represented to be a drug).

{¶ 32} With respect to the details of the offer to sell a controlled substance on October 29, 2014, A.K. testified extensively regarding multiple conversations with Alhashimi arranging the purchase of 1,000 ecstasy tablets split between three separate installments. During one of the conversations, Alhashimi explained an increase in purchase price from $5 to $5.50 because the tablets "contained more cocaine." Viewing this evidence in a light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, the state presented sufficient evidence for Alhashimi's conviction for trafficking in cocaine in Count 6.

{¶ 33} Alhashimi next argues the state failed to present sufficient evidence for his conviction for permitting drug use in Count 10 because he cannot be convicted of permitting his vehicle to be used in a felony drug abuse offense when he was "user" of the vehicle.

{¶ 34} R.C. 2925.13(A) provides that

> [n]o person who is the owner, operator, or person in charge of a locomotive, watercraft, aircraft, or other vehicle, as defined in division (A) of section 4501.01 of the Revised Code, shall knowingly permit the vehicle to be used for the commission of a felony drug abuse offense.

The plain language of the statute does not support Alhashimi's contention that the statute does not prohibit the use of a vehicle to carry out a drug transaction. Rather, R.C. 2925.13(A) clearly states that no operator of a vehicle shall knowingly permit the vehicle to be used to carry out a felony drug abuse offense. The state presented testimony and photographic evidence that Alhashimi drove the vehicle in question to transport himself and the illegal drugs to the various drug transaction meeting points. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Considering the testimony regarding several conversations to arrange the various drug transactions, the state presented sufficient evidence that Alhashimi operated the motor vehicle cognizant that driving to the prearranged destinations with the illegal drugs would probably cause the result of the sale of such drugs. The evidence, viewed in a light most favorable to the state, is legally sufficient to support the verdict as a matter of law.

{¶ 34} Next, Alhashimi argues the state failed to present sufficient evidence for the "in the vicinity of a juvenile" specifications to Counts 5, 6, and 8. Alhashimi contends the state failed to present evidence of the specific age of the alleged juveniles and that the alleged juveniles were within the vicinity at the exact moment the money and drugs were exchanged.

{¶ 35} R.C. 2925.01(BB) provides

> [a]n offense is 'committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

{¶ 36} We find the state presented sufficient evidence that the transactions occurred within 100 feet of a juvenile. Contrary to Alhashimi's claim otherwise, R.C. 2925.01(BB) "does not require the state to prove the specific age of the alleged juvenile, but rather, that

- 11 -

such individual is under the age of eighteen." *State v. Creech*, 12th Dist. Fayette No. CA2006-05-019, 2007-Ohio-2558, ¶ 18. Similar to *Creech*, the state presented testimony that the officers personally observed juveniles within 100 feet of the area where the transaction occurred. A.K. and additional officers in the on-site surveillance vehicle were afforded the opportunity to observe their surroundings and the individuals present at the time, including the individuals' physical characteristics. In addition to officer testimony, the state presented photographic evidence of the alleged juveniles documenting their location in proximity to area of the transactions. Viewing this evidence in a light most favorable to the state, we find there was sufficient evidence presented to support the juvenile specifications. *See, e.g.*, *State v. Fannin*, 8th Dist. Cuyahoga No. 80014, 2002-Ohio-4180, ¶ 121-22 (finding officer testimony describing observations of juveniles in the area of the transaction sufficient to support a conviction on a juvenile specification).

{¶ 37} Alhashimi further claims the state failed to present evidence the juveniles were within 100 feet of the transactions at the exact moment the transactions occurred. With regards to the parking lot transactions in Counts 5 and 6, an officer from the surveillance vehicle testified he began photographing the parking lots once the transaction began to document any juveniles within the vicinity of the transaction area. The officer explained he does not photograph any areas that are not within 100 feet of the transaction.

{¶ 38} With respect to the restaurant transaction in Count 8, A.K. testified the transaction occurred within the restaurant. The officer from the surveillance van testified that juveniles entered the restaurant while A.K. and Alhashimi were inside. The state supported this testimony with photographic evidence. Additionally, a juvenile was simultaneously entering the restaurant as Alhashimi was exiting. Considering the close proximity of diners within the same restaurant, circumstantial evidence establishes juveniles were within 100 feet of A.K. and Alhashimi at the time of the drug transaction. *See State v. Douglas*, 3d Dist.

Marion No. 9-07-58, 2008-Ohio-3232, ¶ 32 (finding state presented sufficient evidence to satisfy R.C. 2925.01[BB] where the jury could find a juvenile was within 100 feet of drug transaction when the juvenile was outside, but in close proximity to, the house where the transaction occurred).

{¶ 39} Finally, Alhashimi contends he was denied the effective assistance of trial counsel because his counsel failed to address the evidence insufficiency issues with respect to Counts 6 and 10 during his Crim.R. 29 motions. Since we found Alhashimi's convictions on Counts 6 and 10 were supported by sufficient evidence, his trial counsel was not deficient for the lack of a motion for acquittal in regards to Counts 6 and 10.

{¶ 40} Accordingly, Alhashimi's third assignment of error is overruled.

{¶ 41} Assignment of Error No. 4:

{¶ 42} THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO MERGE COUNTS 1 AND 2, AND IN FAILING TO MERGE COUNTS 3 AND 4, AND IN FAILING TO MERGE COUNT 10 WITH ALL OTHER COUNTS OF THE INDICTMENT.

{¶ 43} Alhashimi argues the trial court erred by not merging as allied offenses of similar import Counts 1 and 2, and Counts 3 and 4, because the tablets sold in those transactions contained two different controlled substances. Thus, Alhashimi asserts that the sale of a single tablet containing two different controlled substances can only result in one conviction. Alhashimi further argues the trial court erred by not merging his conviction in Count 10 with the remainder of the convictions because the offense occurred at the same time, without a separate animus, and did not result in separate harm.

{¶ 44} "It is well-established that an appellant's failure to raise an argument with regard to allied offenses in the trial court constitutes a waiver of that argument on appeal." *State v. Thomas*, 12th Dist. Butler No. CA2006-03-041, 2006-Ohio-7029, ¶ 33. Alhashimi did not pose these arguments before the trial court; therefore, the arguments are reviewed for

plain error. *Id.* at ¶ 33-35. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error does not exist unless the error is obvious and but for the error, the outcome of the case would have been different. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39. Notice of plain error is taken with the utmost caution and only under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.*

{¶ 45} Pursuant to R.C. 2941.25, a trial court shall not impose multiple punishments for the same criminal conduct. The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 46} "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. Two or more offenses are of dissimilar import if "the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

**{¶ 47}** "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. Therefore, the analysis "may result in varying results for the same set of offenses in different cases." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 52, *abrogated in part by Ruff* at ¶ 30-33. In making this determination pursuant to R.C. 2941.25, a court must review the entire record. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 24. The burden lies with the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

**{¶ 48}** R.C. 2925.03(C)(1) provides

> [i]f the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs.

R.C. 2925.03(C)(4) provides "[i]f the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine." Where a defendant is convicted of separate trafficking offenses involving different types of drugs, each offense requires proof specific to that drug and cannot be supported by trafficking in a different controlled substance. *Accord State v. Daniels*, 12th Dist. Fayette No. CA2014-05-010, 2015-Ohio-1346, ¶ 17 (finding trafficking offenses for heroin, cocaine, and methadone were not allied offenses of similar import).

**{¶ 49}** Alhashimi's trafficking convictions involved two different controlled substances, cocaine and ethylone, and thus, pursuant to R.C. 2925.01(A)(1), (C)(1), and (C)(4), each conviction could not be supported by trafficking in the other illegal drug. Alhashimi's

convictions in Counts 1 and 3 pertained to the ethylone. Whereas, his convictions in Counts 2 and 4 involved the cocaine. The state charged the trafficking in cocaine offenses as fifth-degree felonies; therefore, the offenses did not depend in any respect on the quantity of cocaine or its combination with the ethylone to elevate the degree of the offense.

{¶ 50} Additionally, R.C. 2925.01(D)(1)(C) defines the "bulk amount" for a schedule I controlled substance, such as ethylone, as "[a]n amount equal to or exceeding thirty grams or ten unit doses of a compound, mixture, preparation, or substance that is or contains any amount of a Schedule I hallucinogen * * *, or a schedule I stimulate or depressant." In turn, R.C. 2925.01(E) defines a "unit dose" as "an amount or unit of a compound, mixture, or preparation containing a controlled substance that is separately identifiable and in a form that indicates that it is the amount or unit by which the controlled substance is separately administered to or taken by an individual." Thus, the trafficking statutes contemplate the combination of controlled substances by using the language "a compound, mixture or preparation containing a controlled substance." Therefore, neither Counts 1 and 2 nor Counts 3 and 4 were allied offenses of similar import because the tablets sold by Alhashimi contained both cocaine and ethylone, and the trafficking in cocaine convictions were not elevated in degree based on the amount sold.[2]

{¶ 51} With respect to Count 10, the conduct and harm of knowingly permitting the vehicle to be used for the commission of the trafficking offenses was separate from the conduct and harm of exchanging the controlled substances for the prerecorded money. The

---

2. We note the dissent in *State v. Woodard* raised concerns regarding separate convictions resulting from a sale of a mixture of drugs. *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941 (Ringland, J., concurring in part and dissenting in part) (discussing concerns regarding enhanced penalties for increased bulk weight offenses from drug mixtures and the lack of evidence the appellant knew the baggie of drugs at issue contained both heroin and fentanyl). However, unlike *Woodard*, these concerns are nonexistent in this case because the record contains ample evidence that Alhashimi exchanged the tablets with knowledge they contained both cocaine and ethylone, and as discussed above, Alhashimi did not face enhanced penalties based on the mixture.

transport of Alhashimi and the controlled substances to the various meeting locations to make the transactions was complete when the vehicle entered and parked in the parking lots. Thus, the initial offense of permitting drug abuse was complete before the separate conduct supporting the trafficking offenses was undertaken. *See, e.g.*, *State v. Back*, 12th Dist. Butler Nos. CA2015-03-037 and CA2015-03-038, 2015-Ohio-4447, ¶ 12 (holding offenses were not allied offenses of similar import where the individual conduct supported the initial offense and separate conduct after completion of the initial offense supported the second offense). Therefore, Count 10 was not an allied offense of similar import to the rest of the counts.

{¶ 52} Accordingly, Alhashimi's fourth assignment of error is overruled.

{¶ 53} Assignment of Error No. 5:

{¶ 54} DEFENDANT-APPELLANT'S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT PERMITTED THE STATE TO COMMIT DISCOVERY VIOLATIONS.

{¶ 55} Alhashimi argues the trial court erred by not excluding evidence regarding the officer's testimony that he used his stride to measure the distance between parking spots at the supercenter parking lot because it was a scientific test the state failed to provide in discovery in violation of Crim.R. 16. Alhashimi further asserts the trial erred by permitting the state to use text messages between Alhashimi and A.K. to refresh a witness's recollection that the prosecutor provided to the defense less than 48 hours before trial.

{¶ 56} Crim.R. 16 governs discovery in criminal prosecutions. *State v. Wilson*, 12th Dist. Butler No. CA2012-12-254, 2013-Ohio-3877, ¶ 14. Violations of Crim.R. 16 constitute reversible error "only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995). Whether to grant or deny discovery

motions in a criminal case is left to the sound discretion of the trial court. *State v. Shoop*, 87 Ohio App.3d 462, 469 (3d Dist.1993).

{¶ 57} Crim.R. 16(B)(4) provides that the state shall, upon a written demand for discovery by the defendant, provide to the defense "results of physical or mental examinations, experiments or scientific tests." Contrary to Alhashimi's claim otherwise, the officer's testimony regarding his stride measurements in the parking lot does not constitute a scientific test. *See State v. Goble*, 5 Ohio App.3d 197 (9th Dist.1982), paragraph two of the syllabus (finding "common-sense" investigative work performed by an officer regarding possible routes taken by a defendant does not constitute discoverable "scientific tests or experiments"). Rather, the stride measurements taken by the officer constituted routine police observations and Alhashimi had the opportunity to cross-examine the officer on the issue. Further, Alhashimi was on notice that the state intended to present evidence regarding juveniles within 100 feet of the area of the transaction, as discussed above. Therefore, the trial court did not abuse its discretion in permitting testimony regarding the officer's stride measurements.

{¶ 58} With respect to the text messages, the trial court found the prosecutor did not willfully fail to disclose the text messages, but limited the scope of the messages use at trial to refreshing a witness' recollection or as demonstrative aids. Assuming arguendo the prosecutor willfully failed to disclose the text messages, Alhashimi does not assert any resulting prejudicial effect. While Alhashimi expresses his displeasure with the timing of the prosecutor's disclosure of the text messages, he does not demonstrate how the timing of the disclosure prejudiced him. *See State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 13 (finding appellant's claim pursuant to Crim.R. 16 failed because appellant could not demonstrate any resulting prejudice); *State v. Self*, 112 Ohio App.3d 688, 692 (12th Dist.1996) ("[i]n the absence of any showing of * * * prejudice to appellant, we cannot say

that the trial court abused its discretion in denying appellant's discovery motions"). Therefore, the trial court did not abuse its discretion in permitting the text messages to be used in a limited capacity.

{¶ 59} Accordingly, Alhashimi's fifth assignment of error is overruled.

{¶ 60} Assignment of Error No. 6:

{¶ 61} THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES.

{¶ 62} Alhashimi contends the trial court erred in imposing consecutive sentences because the record clearly did not support its findings that the harm caused by the offenses was so great or unusual that no single prison term could adequately reflect the seriousness of Alhashimi's conduct.

{¶ 63} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *accord State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing."

{¶ 64} As explained in *Marcum*, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *Marcum* at ¶ 9. Rather, pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). A sentence is not "clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the

defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8, citing *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 6.

{¶ 65} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 52.

> First, the trial court must find the consecutive sentence is necessary to protect the public from future crime or to punish the offender. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the trial court must find that at least one of the three circumstances listed in R.C. 2929.14(C)(4)(a)-(c) appl[y].

(Citations omitted.) *Id.*

{¶ 66} R.C. 2929.14(C)(4)(a)-(c) provides:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 67} A trial court is not required to articulate reasons supporting its statutory findings and need not provide a word-for-word recitation of the statutory language to satisfy its requirement for imposing consecutive sentences. *State v. Childers*, 12th Dist. Warren No. CA2014-02-034, 2014-Ohio-4895, ¶ 31. "Nevertheless, the record must reflect that the trial

court engaged in the required sentencing analysis and made the requisite findings." *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 12. The trial court must then incorporate such findings into its sentencing entry. *Id.*

**{¶ 68}** After a thorough review of the record, we find no error in the trial court's decision to impose consecutive sentences. The record reflects that Alhashimi's sentences are not clearly and convincingly contrary to law because the trial court considered the principles and purposes of R.C. 2929.11 and the factors listed in R.C. 2929.12, imposed postrelease control, and sentenced Alhashimi within the permissible statutory range. Furthermore, the trial court's sentencing entry explicitly reflects that the trial court:

> considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. 2929.11. The Court has balanced the seriousness and recidivism factors under R.C. 2929.12 and considered the factors under R.C. 2929.13. The Court inquired if the Defendant had anything to say in mitigation regarding the sentence.

**{¶ 69}** Additionally, the record clearly supports the trial court's finding that the harm caused by the offenses was so great and unusual that no single prison term adequately reflects the seriousness of Alhashimi's conduct. Prior to sentencing Alhashimi to consecutive sentences, the trial court discussed the seriousness of Alhashimi's conduct. The trial court acknowledged the volume of illegal drugs involved and stated that it thought Alhashimi "knew exactly what [he was] doing in terms of arranging [the] offenses on multiple days" to avoid the major drug offender specification. The trial court further noted Alhashimi represented to A.K. the drugs he sold contained controlled substances when they sometimes did not contain such. The trial court stated, "selling people fake drugs sometimes creates more problems and more violence than does some of the actual drugs."

**{¶ 70}** In light of these facts, the trial court decided to impose consecutive sentences. The trial court noted that in imposing consecutive sentences it had considered the principles

and purposes of R.C. 2929.11. The trial court found imposing consecutive sentences was necessary to the protect the public and to punish Alhashimi, not disproportionate to the seriousness of his conduct and the danger he poses to the public, and the harm caused was so great or unusual that no single prison term would adequately reflect the seriousness of the conduct. The trial court memorialized these findings in its sentencing entry.

{¶ 71} From the trial court's statements at the sentencing hearing and the language utilized in the sentencing entry, it is clear the trial court complied with the dictates of R.C. 2929.14(C)(4). *See State v. Philpot*, 12th Dist. Clermont No. CA2013-02-009, 2013-Ohio-4534, ¶ 15. Therefore, the trial court did not err in imposing consecutive sentences and Alhashimi's sixth assignment of error is overruled.

{¶ 72} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.