[Cite as *State v. Raphael*, 2015-Ohio-3179.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS.  CA2014-11-138 |
| Plaintiff-Appellant, | : | CA2014-11-139 |
| | : | O P I N I O N |
| - vs - | | 8/10/2015 |
| | : | |
| JASON RAPHAEL, et al., | : | |
| Defendants-Appellees. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 14CR29858 and 14CR29857

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellant

Robert G. Kelly, Edward T. Kathman, 4353 Montgomery Road, Norwood, Ohio 45212, for defendants-appellees, Jason Raphael and Gregory Clayton

**RINGLAND, J.**

{¶ 1}   Plaintiff-appellant, the state of Ohio, appeals a decision of the Warren County Court of Common Pleas granting the motion to suppress of defendants-appellees, Jason Raphael and Gregory Clayton.  For the reasons stated below, we reverse the decision of the trial court.

{¶ 2}   Around 1:30 a.m. on February 11, 2014, Warren County Sheriff's Deputy Andrew Grossenbaugh was parked in his police cruiser along Interstate 71 and observed a

Chrysler Pacifica traveling southbound at 64 m.p.h. The speed limit on the Interstate was 70 m.p.h. and after passing the deputy's police cruiser, the Pacifica slowed to 53 m.p.h. Deputy Grossenbaugh began following the Pacifica and observed it make several marked lane and lane change violations.

{¶ 3} At approximately 1:41 a.m., Deputy Grossenbaugh initiated a traffic stop. The Pacifica did not immediately respond and the deputy had to activate his emergency lights twice before the vehicle pulled over. Once the vehicle came to a stop, the deputy approached the vehicle and found Clayton in the driver's seat and Raphael in the front passenger seat, speaking on a cell phone. According to Deputy Grossenbaugh, the cell phone conversation alerted him to the possibility of drug activity because it is common for drug couriers to call and alert their contact when they are stopped by police. The deputy also saw eight large packages, shaped in blocks, wrapped with moving blankets and taped extremely tightly. The back seats of the Pacifica were folded down and the packages filled the entire rear of the vehicle. The deputy thought the packages were suspicious because drug couriers often wrap drugs with moving blankets and the packages were similar in size and shape to bales of marijuana. The Pacifica was also traveling along Interstate 71, which is a known drug corridor.

{¶ 4} During Deputy Grossenbaugh's initial contact with Raphael and Clayton, both men were extremely nervous, shaking excessively, avoiding eye contact, and Clayton's "pulse was extremely visible in his neck." The deputy obtained identification from Clayton but Raphael was unable to produce identification or his social security number. Instead, Raphael provided the deputy with his Horseshoe Casino player's card, a name, and a date of birth. The deputy also observed five cell phones and an air freshener in the vehicle. The deputy conducted a background check and was unable to confirm Raphael's identity. However, the deputy learned Clayton had been indicted on drug abuse and weapons charges.

**{¶ 5}** At 1:53 a.m., Deputy Randy Ascencio arrived at the scene and the deputies separately interviewed Clayton and Raphael. The Pacifica was registered to an 84-year-old female from Cincinnati, Ohio, who Clayton claimed was his aunt. At first, Clayton explained he was moving to Columbus, Ohio in his aunt's vehicle. Deputy Grossenbaugh thought it was odd that a vehicle would be fully loaded heading southbound, if Clayton was moving to Columbus. Clayton then stated he was moving "the furniture stuff or antique stuff" of his aunt who had recently passed away. He stated he was moving the furniture from Columbus to Cincinnati. Deputy Grossenbaugh did not believe the bundles were furniture or antiques because they were all similar shape and size and he believed the tight wrapping of the packages would damage the antiques. Deputy Grossenbaugh also thought it was suspicious that Clayton's aunt had lived in Columbus because the registration indicated she resided in Cincinnati. Deputy Ascencio indicated there was confusion during his interview with Raphael regarding whether the men were transporting the packages from Columbus or Cincinnati. In addition, the two men provided inconsistent stories as to how long they had known each other.

**{¶ 6}** At approximately 2:00 a.m., a canine unit arrived at the scene. Raphael and Clayton were each placed separately in the back of the deputies' police cruisers and were not handcuffed. Before being placed in the cruisers, the men consented to a search of their persons and rolling papers were found on Raphael. Around 2:04 a.m., the canine unit did an open air sniff of the Pacifica and did not alert to the presence of drugs. However, Deputy Grossenbaugh still believed the Pacifica was transporting drugs because drug couriers often try to mask odors by wrapping drugs in blankets and plastic wrap and by applying cleaning agents. Specifically, both Deputy Grossenbaugh and Deputy Ascencio believed the wrapped packages in the back of the Pacifica were bales of marijuana and the canine unit's failure to alert did not lessen their suspicions.

{¶ 7} Deputy Grossenbaugh contacted Detective Dan Schweitzer of the Warren County Drug Task Force for assistance to obtain a search warrant. Detective Schweitzer arrived at approximately 2:50 a.m. and after viewing the packages, he also believed they were bales of marijuana. Clayton declined a request for consent to search the Pacifica and the deputies decided to obtain a search warrant for the vehicle.

{¶ 8} Thereafter, Clayton and Raphael were transported separately in the back of Deputy Grossenbaugh's and Deputy Ascencio's police cruisers to the Warren County Sheriff's Office. The Pacifica was taken to the Drug Task Force headquarters where Detective Schwietzer drafted the affidavit for a search warrant. At approximately 6:00 a.m., the warrant was signed by a judge and the search warrant was executed. The bundles in the back of the vehicle were found to be bales of marijuana. Upon opening the bundles, it was discovered the marijuana bales were wrapped multiple times in plastic and paper, with a strong odor of ammonia.

{¶ 9} On March 17, 2014, Raphael and Clayton were each indicted for trafficking in marijuana, in violation of R.C. 2925.03(A)(2), a second-degree felony since the marijuana equaled or exceeded 40,000 grams and possession of marijuana, in violation of R.C. 2925.11(A), a second-degree felony since the marijuana equaled or exceeded 40,000 grams. Clayton was also indicted for permitting drug abuse, in violation of R.C. 2925.13(A), a fifth-degree felony.

{¶ 10} Raphael and Clayton moved to suppress the evidence found from the search of the vehicle and their persons along with their statements they made to the police. After an evidentiary hearing, the trial court suppressed the evidence seized as a result of the search of the Pacifica and evidence obtained from Clayton following his illegal detention. The court reasoned that while the initial traffic stop and detention was lawful, once the canine failed to alert to the presence of drugs, further detention of Clayton and the Pacifica was illegal.

- 4 -

However, the trial court denied the motion to suppress the evidence obtained from Raphael or statements he made to the police because Raphael was lawfully under arrest.

{¶ 11} The state now appeals, asserting two assignments of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE WARREN COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR WHEN IT GRANTED RAPHAEL'S AND CLAYTON'S SUPPRESSION MOTIONS AS TO THE MARIJUANA FOUND IN THE PACIFICA.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE WARREN COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO APPLY THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE.

{¶ 16} The state challenges the suppression of the marijuana found in the Pacifica and argues the continued detention of the Pacifica was lawful even though the canine unit failed to alert to the presence of drugs. The state maintains a drug dog's failure to alert does not automatically negate a police officer's probable cause or reasonable articulable suspicion that a vehicle contains drugs, but is instead one factor among many factors to consider. Therefore, the totality of the circumstances demonstrated the deputies had probable cause to search the Pacifica and, consequently, to detain the vehicle while a search warrant was obtained.

## Standard of Review

{¶ 17} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Brannon*, 12th Dist. Clinton No. CA2014-09-012, 2015-Ohio-1488, ¶ 24. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. In

turn, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.* at ¶ 13. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Swift*, 12th Dist. Butler No. CA2013-08-161, 2014-Ohio-2004, ¶ 9.

## Discussion

{¶ 18} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. When the police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Id.* During a traffic stop, a law enforcement officer may detain a motorist for a period of time sufficient to issue a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates. *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28.

{¶ 19} The detention of a stopped motorist, however, "may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12; *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 25. "The officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel his suspicions of criminal activity." *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 18. An officer may extend a traffic stop in order to conduct a canine sniff of the vehicle's exterior, if the officer has reasonable suspicion that the vehicle contains drugs. *State v. Stephenson*, 12th Dist.

Warren No. CA2014-05-073, 2015-Ohio-233, ¶ 21.

{¶ 20} In the trial court's decision, it found that the initial traffic stop was valid and reasonable suspicion justified the continued detention of the Pacifica, Raphael, and Clayton until the canine unit arrived. However, the trial court found that after the canine failed to alert to the presence of drugs, the detention was not warranted because the only facts that remained to the deputies were nervousness, inconsistent stories, and suspicious packages. The court reasoned the failure of the drug dog to alert rendered this case indistinguishable from *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586.

{¶ 21} In *Casey*, this court held that a motorist was illegally detained when the officer's only suspicion of criminal activity was based on the motorist's nervousness and change in behavior. *Casey* at ¶ 24. We found that the initial traffic stop was valid and the odor of an alcoholic beverage justified the continued detention of the motorist to complete field sobriety tests. *Id.* at ¶ 21. However, once the motorist completed the field sobriety tests and dispelled the officer's suspicions of intoxication, nervousness and furtive glances alone did not amount to enough suspicion to justify further detention. *Id.* at ¶ 27.

{¶ 22} Unlike the facts in *Casey*, Deputies Grossenbaugh and Ascencio observed several behaviors beyond mere nervousness and a change in behavior which they found to be suspicious. Indeed, even the "nervousness, inconsistent stories, and suspicious observations of packages" noted by the trial court, are beyond the facts held by the officers in *Casey*. We find that based on all the facts known to Deputies Grossenbaugh and Ascencio at 2:00 a.m., when the canine unit failed to alert to the presence of drugs in the Pacifica, the deputies had probable cause that the vehicle contained drugs and therefore, could search the vehicle.

{¶ 23} At any time during a valid traffic stop, once police officers obtain probable cause to believe the vehicle contains contraband, the officers may search the vehicle

pursuant to the automobile exception to the Fourth Amendment's warrant requirement. *State v. Durham*, 12th Dist. Warren No. 2013-03-023, 2013-Ohio-4764, ¶ 31. As it relates specifically to an automobile search, probable cause is "a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *State v. Kessler*, 53 Ohio St.2d 204, 208 (1978); *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 27. The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted the search. *Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563 at ¶ 14.

{¶ 24} The facts available to Deputies Grossenbaugh and Ascencio when the canine unit failed to alert were (1) eight suspicious packages, uniform in shape and size, resembling bales of marijuana were in the back of the Pacifica, (2) the packages were wrapped with moving blankets and taped tightly in a manner common with drug couriers, (3) the shape of the bundles were not consistent with the shapes of the furniture and antiques the men claimed to be moving, (4) Clayton's and Raphael's stories regarding how long they had known each other and the purpose of the trip contradicted and Clayton made inconsistent statements regarding the trip, (5) both Raphael and Clayton were extremely nervous, (6) Raphael was on his cell phone at the beginning of the stop and it is common for traffickers to alert their contact when they are stopped by police, (7) the Pacifica was traveling along a major drug corridor, (8) rolling papers were found on Raphael, (9) an air freshener was in the vehicle, (10) there were five cell phones in the vehicle, (11) Clayton had been previously charged with drug and weapon offenses, and (12) Raphael's identity could not be confirmed. Based on all the facts known to Deputies Grossenbaugh and Ascencio at 2:00 a.m., when the canine failed to alert to the presence of drugs in the Pacifica, the deputies had probable cause that the vehicle contained drugs and to search the vehicle.

{¶ 25} Consequently, the deputies could have searched the Pacifica at this point

without a warrant, pursuant to the automobile exception. However, in an abundance of caution, the deputies decided to obtain a warrant to search the Pacifica. The detention of the Pacifica while obtaining a search warrant did not offend the Fourth Amendment. As noted by the United States Supreme Court, "[f]or constitutional purposes, [there is] no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975 (1970). *See United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637 (seizure of property permissible pending issuance of a warrant where probable cause and exception to warrant requirement); *United States v. Giacalone*, 588 F.2d 1158, 1161 (6th Cir.1978).

{¶ 26} Additionally, the canine's failure to alert did not destroy the probable cause held by Deputies Grossenbaugh and Ascencio that the Pacifica contained drugs. As noted by the Second District, "[w]hen a drug dog fails to alert, it simply means that he cannot smell the drugs, not that they are not present." *State v. Clark*, 2d Dist. Montgomery No. 18314, 2000 WL 1643789, *7 (Nov. 3, 2000). The failure to alert did not negate the other facts that contributed to the deputies' suspicion that the Pacifica contained drugs. Instead, the failure to alert is simply another factor to consider in analyzing the existence of the requisite suspicion. *See State v. Alexander*, 151 Ohio App.3d 590, 2003-Ohio-760, ¶ 56 (8th Dist.); *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir.1982). Moreover, we note the search warrant included the information that the canine failed to alert to the presence of drugs in the Pacifica, yet probable cause was still found to support the issuance of the warrant.[1]

## Conclusion

{¶ 31} Consequently, we find the trial court erred in granting the motions to suppress

---

1. We do not address the legality of the detention of Raphael and Clayton since it has no bearing on the legality of the search of the Pacifica.

the marijuana found in the Pacifica. Even considering the canine's failure to alert to the presence of drugs in the Pacifica, the deputies had probable cause to believe the vehicle contained contraband. Thus, the deputies could detain the Pacifica while a search warrant was obtained. The state's first assignment of error is sustained. In light of our resolution of the state's first assignment of error, the state's second assignment of error is moot.

{¶ 32} The trial court's decision suppressing the marijuana found in the Pacifica is reversed. This cause is remanded for further proceedings consistent with this opinion.

{¶ 33} Judgment reversed and remanded.

M. POWELL, P.J., and S. POWELL, J., concur.