[Cite as *State v. Clayton*, 2017-Ohio-8538.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2017-01-009 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 11/13/2017 |
| - vs - | | |
| | : | |
| GREGORY CLAYTON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CR29857

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Thomas G. Eagle, 3400 North State Route 741, Lebanon, Ohio 45036, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Gregory Clayton, appeals his conviction in the Warren County Court of Common Pleas for possession of marijuana.

{¶ 2} Around 1:30 a.m. on February 11, 2014, Warren County Sheriff's Deputy Andrew Grossenbaugh was parked in his police cruiser along Interstate 71 and observed a Chrysler Pacifica traveling southbound at 64 m.p.h. in a 70 m.p.h. zone. The Pacifica's

speed was unremarkable to the deputy. However, after passing the deputy's police cruiser, the Pacifica slowed to 53 m.p.h., which the deputy found to be suspicious. Deputy Grossenbaugh began following the Pacifica. After he observed it make several marked lane and lane change violations, he initiated a traffic stop.

{¶ 3} Upon approaching the vehicle, the deputy found appellant in the driver's seat and Jason Raphael in the front passenger seat, speaking on a cell phone. According to Deputy Grossenbaugh, the cell phone conversation alerted him to the possibility of drug activity because it is common for drug couriers to call and alert their contact when they are stopped by police. The deputy observed eight large, block-shaped packages, tightly taped and wrapped with moving blankets, upon the folded-down back seats of the Pacifica. The deputy thought the packages were suspicious because drug couriers often wrap drugs with moving blankets and the packages were similar in size and shape to bales of marijuana. The Pacifica was also traveling along Interstate 71, which is a known drug corridor.

{¶ 4} During Deputy Grossenbaugh's initial contact with appellant and Raphael, both men were extremely nervous, shaking excessively, and avoiding eye contact. The deputy obtained identification from appellant but Raphael was unable to produce identification or his social security number. Instead, Raphael provided the deputy with his Horseshoe Casino player's card, a name, and a date of birth. The deputy also observed five cell phones and an air freshener in the vehicle.

{¶ 5} Sergeant (then Deputy) Randy Asencio arrived at the scene and the officers separately interviewed appellant and Raphael. The Pacifica was registered to an 84-year-old woman from Cincinnati, Ohio, who appellant claimed was his aunt. Appellant provided conflicting explanations as to where he was going but ultimately stated he was moving "furniture or antiques" of his recently deceased aunt. Appellant stated he was moving the furniture from Columbus to Cincinnati. Deputy Grossenbaugh did not believe the bundles

were furniture or antiques because they were all similar in shape and size and he believed the tight wrapping of the packages would damage the antiques. There was confusion during the officers' interviews with appellant and Raphael regarding whether the men were transporting the packages from Columbus or Cincinnati. In addition, the two men provided inconsistent stories as to how long they had known each other.

{¶ 6} A canine unit arrived at the scene. Appellant and Raphael were each placed in the back of the officers' separate police cruisers. Before being placed in the cruisers, the men consented to a search of their persons and rolling papers were found on Raphael. Although the canine unit did not alert to the presence of drugs, both officers believed the wrapped packages in the back of the Pacifica were bales of marijuana and the canine unit's failure to alert did not lessen their suspicions. Consequently, Deputy Grossenbaugh contacted Detective Dan Schweitzer of the Warren County Drug Task Force for assistance to obtain a search warrant. Detective Schweitzer arrived at the scene and after viewing the packages, he too believed they were bales of marijuana. Appellant declined a request for consent to search the Pacifica and the officers decided to obtain a search warrant for the vehicle.

{¶ 7} Thereafter, appellant and Raphael were separately transported to the Warren County Sheriff's Office. The Pacifica was taken to the Drug Task Force headquarters where Detective Schweitzer drafted the affidavit for a search warrant. At approximately 6:00 a.m., the warrant was signed by a judge and the search warrant was executed. The bundles in the back of the vehicle were found to be bales of marijuana.

{¶ 8} On March 17, 2014, appellant and Raphael were each indicted for trafficking in marijuana, in violation of R.C. 2925.03(A)(2), and possession of marijuana, in violation of R.C. 2925.11(A), both second-degree felonies since the marijuana equaled or exceeded 40,000 grams. Appellant was also indicted for permitting drug abuse, in violation of R.C.

2925.13(A), a fifth-degree felony.

{¶ 9} Appellant and Raphael moved to suppress the evidence found from the search of the vehicle and their persons along with the statements both made to the police. Following an evidentiary hearing, the trial court suppressed the evidence seized as a result of the search of the Pacifica and evidence obtained from appellant. The trial court reasoned that while the initial traffic stop and detention was lawful, once the canine failed to alert to the presence of drugs, further detention of appellant and the Pacifica was illegal. The trial court, however, denied the motion to suppress the evidence obtained from Raphael's person or the statements he made to the police.

{¶ 10} The state appealed the suppression of the marijuana found in the Pacifica. On August 10, 2015, we reversed the trial court's decision, finding that considering the information known to the officers prior to the time the canine unit responded to the scene, the officers had probable cause to search the Pacifica pursuant to the automobile exception, and therefore, the continued detention of the vehicle to obtain a search warrant did not violate the Fourth Amendment to the United States Constitution. *State v. Raphael*, 12th Dist. Warren Nos. CA2014-11-138 and CA2014-11-139, 2015-Ohio-3179, ¶ 31. We remanded the matter to the trial court for further proceedings.

{¶ 11} Appellant sought a discretionary appeal to the Ohio Supreme Court. Initially, the supreme court accepted jurisdiction to review the Fourth Amendment issue pursuant to the recent decision of the United States Supreme Court in *Rodriguez v. United States*, __ U.S. __135 S.Ct. 1609 (2015). However, the Ohio Supreme Court later dismissed the appeal for failure to prosecute when appellant's then appellate counsel failed to file a merit brief. *State v. Raphael*, 145 Ohio St.3d 1431, 2016-Ohio-1328. The supreme court subsequently denied appellant's motion for reconsideration and his pro se motion for relief and pro se application for reopening the appeal. *State v. Raphael*, 145 Ohio St.3d 1473, 2016-Ohio-

3028; and *State v. Raphael*, 147 Ohio St.3d 1457, 2016-Ohio-8121.

{¶ 12} The matter was then returned to the trial court for further proceedings. On remand, appellant and Raphael were tried jointly in a bench trial. Neither testified at trial. Deputy Grossenbaugh, Sergeant Asencio, Detective Schweitzer, and Franklin Police Officer Steven Dunham testified on behalf of the state.[1] The trial court heard closing arguments from the parties and took the matter under advisement. On January 13, 2017, the trial court found appellant guilty of marijuana possession and permitting drug abuse, but not guilty of trafficking in marijuana, and sentenced him to a mandatory eight years in prison.

{¶ 13} Appellant now appeals, raising two assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT WITHOUT REOPENING THE MOTION TO SUPPRESS.

{¶ 16} Appellant argues that given the ineffective assistance of his then appellate counsel in failing to prosecute the discretionary appeal to the supreme court, the only remedy available to appellant should have been to reopen the motion to suppress and reconsider the Fourth Amendment issue under *Rodriguez*. Therefore, appellant asserts, the trial court erred in convicting him of marijuana possession and permitting drug abuse without first reopening the motion to suppress.

{¶ 17} *Rodriguez* was decided on April 21, 2015, several months before we reversed the trial court's grant of appellant's motion to suppress. Appellant's arguments regarding the Fourth Amendment issue could have been raised in a motion for reconsideration of this court's opinion immediately after our opinion was released on August 10, 2015, but were not.

---

1. At trial, Officer Dunham testified that while he was now a police officer for the Franklin Police Department, he was working as a detective for the Warren County Drug Task Force in February 2014. Officer Dunham interviewed Raphael at the Warren County Sheriff's Office on February 11, 2014.

**{¶ 18}** Following the supreme court's dismissal of appellant's discretionary appeal and denial of his subsequent motions for reconsideration, relief, and reopening the appeal, the matter was returned to the trial court. Under the "law of the case" doctrine, the decision of a reviewing court in a case remains the law of that case on legal questions involved for all subsequent proceedings at both trial and reviewing levels. *State v. Davis,* 2d Dist. Clark No. 2005-CA-43, 2006-Ohio-1592, ¶ 24. The rule is necessary to avoid endless litigation by settling the issues and to preserve the structure of superior and inferior courts as designated by the Ohio Constitution. *State v. Keller*, 2d Dist. Montgomery No. 18411, 2001 Ohio App. LEXIS 2468, *13 (June 1, 2001).

**{¶ 19}** Appellant was unable to persuade the supreme court to reconsider its dismissal of the discretionary appeal. Even though appellant asserted ineffective assistance of his then appellate counsel as grounds for his subsequent motions, appellant was further unable to persuade the supreme court to grant him relief and reopen the appeal in order to review the Fourth Amendment issue under *Rodriguez*. In other words, appellant was unable to persuade the supreme court to accept our August 10, 2015 opinion for review and to reverse it. The supreme court's denial of appellant's motions leaves intact our ruling that the motion to suppress was improperly granted, which is the law of the case. Once the matter was back before the trial court, appellant never moved to reopen the motion to suppress. There is no obligation for a trial court to sua sponte reopen a motion to suppress. The trial court, therefore, did not err in convicting appellant without first reopening the motion to suppress.

**{¶ 20}** Appellant's first assignment of error is overruled.

**{¶ 21}** Assignment of Error No. 2:

**{¶ 22}** THE TRIAL COURT ERRED IN TRYING THE DEFENDANTS TOGETHER AND ADMITTING HEARSAY FROM ONE CO-DEFENDANT AGAINST THE OTHER.

**{¶ 23}** Appellant argues the trial court erred in admitting Raphael's inculpatory hearsay

statements to the police into evidence. As stated above, neither appellant nor Raphael testified at their joint trial. However, their statements to the police were admitted without objection during the testimony of the various law enforcement officers. Appellant asserts that the trial court's admission of Raphael's statements prejudiced him and violated his Sixth Amendment right to confront witnesses against him pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968), and its progeny.

**{¶ 24}** Appellant's failure to object waives all but plain error. *See State v. Slagle*, 65 Ohio St.3d 597 (1992). Plain error does not exist unless the error is obvious and but for the error, the outcome of the case would have been different. *State v. Alhashimi*, 12th Dist. Warren Nos. CA2016-07-065 and CA2017-07-066, 2017-Ohio-7658, ¶ 44. Notice of plain error is taken with the utmost caution and only under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.*

**{¶ 25}** The Confrontation Clause prohibits the admission or use of testimonial statements of a witness who does not appear at trial unless that witness is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354 (2004). However, the Sixth Amendment right to confrontation may only be invoked under situations where hearsay is offered into evidence. *Id.* at 60, fn. 9 (the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted). Thus, the statements must be hearsay to trigger the *Bruton* rule. *State v. Brown*, 11th Dist. Lake No. 2012-L-007, 2013-Ohio-1099, ¶ 50; *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 30.

**{¶ 26}** In *Bruton*, the United States Supreme Court held that in a joint jury trial of two defendants, a defendant's Sixth Amendment right to confrontation is violated when the confession of a non-testifying co-defendant is admitted at their joint trial, even when the trial

- 7 -

court carefully instructed the jury that the confession could only be admitted against that co-defendant. *Bruton*, 391 U.S. at 126, 137. The rationale of *Bruton* was that a co-defendant's confession that incriminates a defendant is so "inevitably suspect" and "devastating" that the ordinarily sound assumption that a jury will be able to faithfully follow its instructions could not be applied. *Id.* at 136. Hence, the Supreme Court held it could not accept limiting jury instructions as an adequate substitute for a defendant's constitutional right of cross-examination in the context of a joint jury trial where a co-defendant does not testify and thus cannot be tested by cross-examination. *Id.* at 137.

{¶ 27} The Ohio Supreme Court expanded the *Bruton* rule to exclude not only confessions to the police but also a co-defendant's statements to a prosecution witness. *State v. Moritz*, 63 Ohio St.2d 150, 154 (1980). The supreme court further applied the *Bruton* rule "with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement. * * * Just as one can be convicted on circumstantial evidence, one can be circumstantially accused." *Id.* at 155. Nevertheless, the supreme court held that a mere finding of a violation of the *Bruton* rule during a trial does not automatically require a reversal of the defendant's conviction if properly admitted evidence of guilt is overwhelming, and the prejudicial effect of the admission of the co-defendant's statement is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the co-defendant's statement was harmless error. *Id.* at 156.

{¶ 28} Subsequently, the United States Supreme Court took a different posture when it addressed whether the admission of a co-defendant's redacted confession at a joint jury trial violated the Confrontation Clause. *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702 (1987); *In re Watson*, 47 Ohio St.3d 86, 91 (1989). In *Richardson*, the co-defendant's confession was redacted to omit any reference to the defendant and any reference that anyone other than the co-defendant and another individual were involved in the crimes. The

- 8 -

co-defendant's confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial through the defendant's own testimony.

{¶ 29} The Supreme Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson* at 211. Nevertheless, the Supreme Court remanded the case because "the prosecutor sought to undo the effect of the limiting instruction by urging the jury to use [the co-defendant's] confession in evaluating [the defendant's] case." *Id.*

{¶ 30} After *Richardson*, the Ohio Supreme Court revisited the issue in the context of a juvenile delinquency case in *Watson*, 47 Ohio St.3d 86. Unlike *Bruton*, *Morritz*, and *Richardson*, *Watson* involved a joint bench trial. The supreme court held that

> The Confrontation Clauses of Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution are not violated by the admission of a nontestifying co-defendant's confession, where the confession is redacted to eliminate not only the defendant's name, but also any reference to his or her existence. (*Richardson* v. *Marsh* [1987], 481 U.S. 200, approved and followed.)

*Watson* at paragraph two of the syllabus.

{¶ 31} The supreme court further held that *Watson* differed from *Bruton* in two important respects:

> First, because the co-defendants' confessions were redacted there was little risk of applying one co-defendant's confession against the others. Also, this case was tried before the trial judge; therefore, the risk that the jury would not follow the court's instructions was not present. Furthermore, we have noted that the trial court can be presumed to apply the law correctly, and there is no reason to believe otherwise in this case. Therefore, we conclude that the trial court did not err in overruling appellants' motions for separate trials and in receiving into evidence the confession of each co-defendant.

(Citations omitted.) *Id.* at 91.

**{¶ 32}** Trial testimony shows that in response to the various law enforcement officers' questions, appellant told them that he and Raphael had grown up together, Raphael lived in New York but had returned to Cincinnati several months ago, and the two of them drove to Columbus where they spent a couple of hours before returning to Cincinnati. Appellant further told the officers he was moving his late aunt's furniture and antiques to Cincinnati. When asked by Detective Schweitzer what kind of antiques they were, appellant did not respond. When asked twice by Deputy Grossenbaugh whether there were drugs in the Pacifica, appellant first denied there were any drugs in the vehicle, then later replied, "nothing that he knew of."

**{¶ 33}** Trial testimony further shows that in response to the officers' questions, Raphael told them he was from New York, and that he and appellant had met through some mutual friends a few months ago. Raphael further told the officers that appellant picked him up in Cincinnati and that they drove to Columbus where they either "hung out" at a friend's house or visited some of appellant's relatives for a few hours. Raphael told the officers that upon leaving Columbus, he could not sleep in the back of the Pacifica as the vehicle was full and that appellant told him the packages were his late aunt's furniture which he was taking to Atlanta. Raphael consistently denied that anything in the vehicle was his and denied he knew anything about the marijuana. When Officer Dunham told him there were about 425 pounds of marijuana in the back of the Pacifica, Raphael replied he had not handled any marijuana.

**{¶ 34}** Appellant asserts that his right of confrontation was violated when the trial court admitted Raphael's hearsay statements which "directly implicat[ed] [appellant], compared to the generalities attributed from [appellant]," by describing appellant's "contact with the loaded contraband to support [appellant's] knowledge of what it was."

- 10 -

{¶ 35} We note at the outset that appellant does not specifically identify Raphael's alleged inculpatory hearsay statements, and instead merely directs us to two pages of the trial transcript which pertain to Officer Dunham's testimony.[2] Nor does appellant specifically state how Raphael's statements directly incriminated him. As we have stated before, it is not this court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *See Lebanon v. Ballinger*, 12th Dist. Warren No. CA2014-08-107, 2015-Ohio-3522.

{¶ 36} "Hearsay" is a statement, other than one made by the declarant while testifying at trial or a hearing, offered into evidence to prove the truth of the matter asserted. Evid.R. 801(C). We are not persuaded that Raphael's statements to the police are hearsay, that is, that they were offered to prove the truth of the facts asserted by Raphael. To the contrary, the state offered Raphael's statements because they were not true and to inferentially suggest that appellant and Raphael were attempting to conceal criminal activity. Thus, Raphael's statements were offered not to prove the truth of what Raphael was asserting, but simply to establish what was said. Accordingly, his statements were non-hearsay and do not implicate *Bruton* and its progeny. *See Cassano*, 2012-Ohio-4047.

{¶ 37} Even assuming Raphael's statements were hearsay, we find that they do not come within the ambit of *Bruton* and its progeny. Raphael's statements were not facially incriminating and did not "tend significantly to incriminate" appellant under *Bruton* and *Moritz* as both men told the officers the same general story about appellant moving his late aunt's furniture, and both denied knowing about the marijuana in the back of the Pacifica. *See In re C.M.*, 8th Dist. Cuyahoga No. 99599, 2013-Ohio-5426 (no violation of right of confrontation

---

2. On those two pages, Officer Dunham testified that in response to his questions, Raphael told him he and appellant drove to Columbus where they stayed "one to one and a half hours," when they got back into the Pacifica in Columbus, Raphael could not get into the backseat because the back seat was full, and appellant told him it was furniture he was taking from Columbus to Atlanta.

where the co-defendant's statements did not inculpate the defendant and were similar to the defendant's statement to the police). In addition, Raphael never told the police that appellant loaded the Pacifica himself. In fact, there is no evidence as to who loaded the vehicle.

{¶ 38} *Richardson* instructs us that even when the nontestifying co-defendant's statement is only inferentially incriminating, a limiting jury instruction will not cure a Confrontation Clause violation when there is some indication that the statement was relied upon in establishing the defendant's guilt. Even if Raphael's statements are inferentially incriminating pursuant to *Richardson* and *Watson*, by implying that it was appellant who loaded the vehicle, we find no plain error. This was a joint bench trial where the opportunity for prejudice to the defendants is severely limited and where the necessity of a limiting instruction is obviated. *See State v. Merriweather*, 8th Dist. Cuyahoga No. 58089, 1991 Ohio App. LEXIS 1294 (Mar. 28, 1991). It is well-established that in a bench trial, a trial court is presumed to act properly in consideration of the evidence. *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979). That is, a trial court is presumed to consider only the relevant, material, and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record. *Id.*; *State v. Proffitt*, 12th Dist. Butler Nos. CA2016-07-134 and CA2016-07-135, 2017-Ohio-1236, ¶ 34, fn. 5. There is no indication that the trial court improperly considered Raphael's statements in convicting appellant of marijuana possession and permitting drug abuse. In fact, before the trial court rendered its verdict on January 13, 2017, the court specifically told the parties that in considering the evidence that was admitted in the case, it looked at each of their cases individually.

{¶ 39} We therefore find the trial court did not err in receiving into evidence Raphael's statements to the police, and the trial court's admission of Raphael's statements did not violate appellant's Sixth Amendment right to confront witnesses against him pursuant to *Bruton* and its progeny.

{¶ 40} Appellant's second assignment of error is overruled.

{¶ 41} Judgment affirmed.

S. POWELL, P.J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 42} I concur with the judgment as expressed above, as well as the analysis, but have additional thoughts as to the second assignment of error.

{¶ 43} The statements of appellant and Raphael did not implicate either person in criminal activity. However, when law enforcement officers noted the inconsistencies in comparing their respective statements, suspicions were raised. In conducting initial traffic stops, inconsistent statements by the occupants can raise or escalate an officer's suspicions. *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 28. Depending on what other factors are present, inconsistent statements can be associated with criminal activity. *Id.* at ¶ 38. Therefore, I conclude that the statements were not admitted to prove the truth of the matter asserted, but rather to explain why the officers had suspicions and continued their investigation in the manner in which they did.

{¶ 44} There was no objection at trial because the statements were only offered to explain the officers' conduct. Furthermore, there was a thread of consistency between the statements of appellant and Raphael. Arguably, some of Raphael's statements aided appellant by bolstering appellant's statements. This leads to my second point, which is appellant invited and induced any alleged error.

{¶ 45} Appellant waived time for his trial so that a bench trial could take place jointly with Raphael. It is evident appellant effectuated a joint trial. Furthermore, there was no

- 13 -

objection to Raphael's statements coming into evidence at the trial. Parties cannot take advantage of an error they invited or induced. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025. Even if the hearsay statements were considered as substantive evidence and admitted in error, such error is waived if invited or induced by the defendant. Even plain error is waived or forfeited when the error is invited or induced by the defendant. *Berry v. Paint Valley Supply, L.L.C.*, 4th Dist. Highland No. 16CA19, 2017-Ohio-4254, citing *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286.

{¶ 46} Here, appellant knew of Raphael's statements yet appellant took affirmative steps toward securing a joint trial. Additionally, appellant did not object to the statements coming into evidence because, to some degree, Raphael's statements corroborated appellant's statements. Appellant's trial strategy cannot now be used to his advantage on appeal.

{¶ 47} Appellant cannot make a strategical decision at trial regarding its underlying *Bruton* claim then complain on appeal that the result of that decision constitutes reversible error. *State v. Jennings*, 10th Dist. Franklin Nos. 09AP-70 and 09AP-75, 2009-Ohio-6840, ¶ 76, citing *United States v. Jernigan*, 341 F.3d 1273 (11th Cir.2003). Granted, appellant's trial strategy would have been more evident had the trial court or prosecutor sought a waiver from trial counsel of any potential *Bruton* issues. Nevertheless, the record clearly reflects a strategical decision to use both appellant's statements and Raphael's statements in an effort to advance appellant's claim of innocence without actually testifying and being subject to the prosecutor's cross-examination.

{¶ 48} In conclusion, I agree with the majority's analysis that the statements admitted did not implicate a *Bruton* violation and that no plain error occurred. Additionally, I find that even if a *Bruton* violation occurred, it was an error invited or induced by appellant and

therefore forfeited upon appeal.[3]

---

3. Just as a *Bruton* violation can be harless error, so too can it be invited. *See State v. Edwards*, 11th Dist. Lake No. 2012-L-034, 2013-Ohio-1290, ¶ 39.