[Cite as *State v. Raphael*, 2018-Ohio-140.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2017-01-010 |
| | : | O P I N I O N |
| - vs - | | 1/16/2018 |
| | : | |
| JASON RAPHAEL, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14 CR 29858

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

The Helbling Law Firm, L.L.C., John J. Helbling, 6539 Harrison Avenue, #124, Cincinnati, Ohio 45247, for defendant-appellant

**PIPER, J.**

{¶ 1}   Defendant-appellant, Jason Raphael, appeals his conviction in the Warren County Court of Common Pleas for possession of marijuana.

{¶ 2}   A Warren County deputy was patrolling Interstate 71 at approximately 1:30 a.m. when he observed a vehicle approach him at 66 m.p.h. in an area where the posted speed limit was 70 m.p.h.  Despite approaching the deputy while driving below the speed limit, the

vehicle slowed suddenly to 53 m.p.h. The deputy found the reduction in speed from 66 to 53 m.p.h. suspicious and began following the vehicle. Once behind the vehicle, the vehicle changed lanes for what the deputy perceived as no apparent reason. The deputy followed the vehicle for approximately nine minutes, during which it entered a construction zone. Within the construction zone, the deputy observed the driver of the vehicle commit lane violations. The deputy then initiated a traffic stop. However, the deputy had to deploy his blue lights twice before the vehicle pulled over to the side of the road.

{¶ 3} The deputy approached the vehicle and shined his flashlight into the rear passenger seat of the vehicle where he observed large packages wrapped in blankets and tape. The deputy then approached the passenger side of the vehicle and asked the driver for identification after noticing that the passenger was talking on his cell phone. The driver was then identified as Gregory Clayton. Clayton told the deputy that he was moving items for his aunt, to whom the vehicle was registered. The deputy observed four cell phones in the front seat, as well as an air freshener hanging from the rear-view mirror. The deputy then made contact with the passenger, later identified as Raphael, who had been on his cell phone during the time the deputy spoke with Clayton. Raphael did not have identification to provide the deputy, but offered his player's card from the Horseshoe Casino.

{¶ 4} The deputy observed that the two men were shaking excessively, refused to make eye contact with him, and were nervous. The deputy asked the men to exit the vehicle and performed a pat-down on each. Neither man had any contraband or weapons on their person. However, information from the police dispatch revealed that Clayton had been charged with drug activity in the past. The deputy requested a canine unit and backup, and such arrived. However, the canine did not indicate the presence of drugs in the vehicle.

{¶ 5} The deputy, still suspicious of drug activity, called a detective from the Warren County Drug Task Force. The detective arrived and drove the vehicle Clayton was driving to

the police garage and applied for a search warrant. The detective then executed the approved warrant and located approximately 400 pounds of marijuana in the back of the vehicle.

{¶ 6} Clayton and Raphael were indicted for trafficking and possession of marijuana. Both men filed a motion to suppress the evidence and statements obtained on the night of the traffic stop. The trial court granted the motion to suppress all evidence seized as a result of the search of the vehicle, but denied the motion as to Raphael's statements to police and any evidence obtained from him.

{¶ 7} The state appealed the trial court's decision to this court, and we reversed the trial court's decision granting the motion to suppress. *State v. Raphael*, 12th Dist. Warren Nos. CA2014-11-138 and CA2014-11-139, 2015-Ohio-3179. Raphael then appealed this court's decision to the Ohio Supreme Court, which accepted jurisdiction to review the appeal. However, the court later dismissed the appeal for lack of prosecution when defense counsel failed to file a brief. Raphael then filed motions for reconsideration, for relief, and for reopening of the appeal with the Ohio Supreme Court. However, each was denied by the Ohio Supreme Court, and the matter proceeded to trial.

{¶ 8} Clayton and Raphael elected to have their joint case heard by the trial court rather than a jury. The judge found Raphael not guilty of trafficking, but guilty of possession of marijuana. The conviction carried a mandatory eight-year prison sentence. Raphael now appeals his conviction, raising the following assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT WITHOUT REOPENING THE MOTION TO SUPPRESS.

{¶ 11} Raphael argues in his first assignment of error that the trial court should have re-opened the motion to suppress when the case was remanded to the trial court for a bench

- 3 -

trial.

**{¶ 12}** The Ohio Supreme Court agreed to review this court's reversal of the trial court's grant of the motion to suppress considering the United States Supreme Court's ruling in *Rodriguez v. United States*, ___U.S.___, 135 S.Ct. 1609 (2015).[1] The *Rodriguez* court determined that an extension of a traffic stop by the police to conduct a dog sniff is an unreasonable seizure unless the officer otherwise has a reasonable suspicion of criminal activity. *Id.* Following the Ohio Supreme Court's dismissal of Raphael's discretionary appeal and denial of his subsequent motions for reconsideration, relief, and reopening the appeal, the matter was returned to the trial court.[2]

**{¶ 13}** The "law of the case" doctrine provides that a decision of a reviewing court in a case remains the law of that case on legal questions involved for all subsequent proceedings at both trial and reviewing levels. *State v. Clayton*, 12th Dist. Warren No. CA2017-01-009, 2017-Ohio-8538. The rule allows courts to avoid endless litigation by settling issues and to preserve the structure of superior and inferior courts as designated by the Ohio Constitution. *Id.*

**{¶ 14}** The record is undisputed that Raphael was unable to persuade the Ohio Supreme Court to reconsider its dismissal of his discretionary appeal. Even though Raphael asserted ineffective assistance of his then appellate counsel as grounds for his subsequent motions, he was further unable to persuade the Ohio Supreme Court to grant relief and reopen the appeal in order to review the Fourth Amendment issue according to *Rodriguez*.

---

1. *Rodriguez* was decided on April 21, 2015, several months before we reversed the trial court's grant of the motion to suppress.

2. Raphael argues that his appellate counsel was ineffective for failing to file a brief with the Ohio Supreme Court. Even if counsel was ineffective, which this court makes no determination on, this court cannot provide a remedy because our role on appeal is to review, affirm, modify, or reverse judgments or orders of inferior courts. Ohio Constitution, Article IV, Section 3(B)(2). The Ohio Supreme Court is not inferior to this court, and we have no authority to review its decision regarding Raphael's ineffective assistance of appellate counsel claim.

- 4 -

{¶ 15} The Ohio Supreme Court did not review or reverse this court's decision reversing the trial court's grant of Raphael's motion to suppress. The supreme court's denial of Raphael's motions therefore leaves *intact* our ruling that the motion to suppress was improperly granted, which is the law of the case. Once our decision became law of the case, and the matter was remanded to the trial court, the trial court had no obligation to, nor could it, sua sponte re-open the motion to suppress. The trial court, therefore, did not err in convicting Raphael without first reopening the motion to suppress. As such, Raphael's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT BASED UPON "CONSTRUCTIVE POSSESSION."

{¶ 18} Raphael argues in his second assignment of error that the trial court erred by finding that he constructively possessed the marijuana.

{¶ 19} Raphael was convicted of possession of marijuana. According to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person has knowledge of circumstances when he is aware that such circumstances probably exist. *Id.* Knowledge can be ascertained from the surrounding facts and circumstances in the case. *State v. Anderson*, 12th Dist. Fayette No. CA2008-07-026, 2009-Ohio-2521, ¶ 28.

{¶ 20} Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be constructive or actual. *State v. Williams*, 12th Dist. Butler No. CA2014-09-180, 2015-Ohio-2010, ¶ 14.

- 5 -

{¶ 21}  "An accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25.  Constructive possession may be proven by circumstantial evidence alone.  *Williams* at ¶ 15.  Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession.  *Id.*

{¶ 22}  A person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession and two or more persons may have possession of an object together if they can control it, exclusive of others. *State v. Weckner*, 12th Dist. Brown No. CA2001-06-009, 2002-Ohio-1012.

{¶ 23}  During the trial, the state presented evidence to establish that Raphael had constructive possession of the marijuana.  The marijuana was bundled in large packages, each estimated to weigh 50 pounds, which were located just behind Raphael in the vehicle. The eight bundles took up most of the back of the vehicle, and were clearly visible to Raphael as the passenger in the vehicle.  Despite Clayton's claim to detectives that the packages contained personal items, Raphael could see that each bundle was shaped the same, and packaged in the exact same manner – something unlikely to occur with different personal items.

{¶ 24}  Raphael's interactions with police during and after the stop also demonstrate that he had constructive possession of the marijuana.  While Raphael denied ownership of the marijuana to detectives, he did not state he was unaware that the marijuana was present in the vehicle.  Raphael spoke to someone on his cell phone during the traffic stop, and four other cell phones were located in close proximity to Raphael.  The state presented testimony

that having multiple cell phones and speaking to someone during a stop indicate drug activity such as warning another that the stop occurred.

{¶ 25} Additionally, Raphael refused to provide any identification, other than a player's card, to the deputy, and identified himself with different names. Raphael would not provide a home address other than New York, and he further claimed that he did not know his social security number. Moreover, Raphael's story to police differed significantly from Clayton's, such as how long the two had known each other, where the vehicle was loaded, what the two were doing on Interstate 71, and where the bundles were headed.

{¶ 26} The state also presented evidence that Raphael was extremely nervous during the traffic stop, including shaking and avoiding eye contact with the deputy. When asked how Raphael displayed nervousness, the deputy testified, "upon making thousands of traffic stops in my career, this stood out to me as being excessively nervous." If Raphael did not know about or have control over the marijuana, there was no reason for him to experience such extreme nervousness during the stop.

{¶ 27} The evidence also indicated that Raphael deposited a large amount of cash into his bank just hours before the traffic stop. Raphael also had a receipt on his person showing his purchase of 180 gallon bags. The detective from the drug task force testified that in his experience, drug transporters would break down large amounts of packed marijuana into gallon baggies, one pound per gallon bag.

{¶ 28} Taken together, this evidence demonstrates that Raphael knowingly possessed the marijuana through constructive possession. As such, Raphael's conviction was valid, and his second assignment of error is overruled.

{¶ 29} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.